BARTON BROS., Appellants, v. CHICAGO FIRE PROOF COVERING CO., Respondents.

**Kansas City Court of Appeals, May 8, 1905.**

1. **INSTRUCTIONS: False Issue.** An instruction set out in the opinion is condemned as setting up a false issue upon which there was no controversy and was equivalent. to a peremptory instruction.

2. **SALES: Warranty: Execution of Paper: Relation.** At the time of a sale the vendor executed a warranty to the execution of which the vendee objected. Later on after the sale the vendor furnished a properly executed warranty. *Held,* the latter was the same contract as the former and related back to the date of the former.

3. ———: ———: **Accompanying Printed Matter.** A contract unconditionally warranted certain paints if mixed according to directions. These directions did not refer to certain printed pamphlets for information as to what kind of surfaces the paints should be applied to. *Held,* the vendee had a right to stand upon his written guarantee and it was not competent to interject into it any other condition whatever.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED AND REMANDED.

*Ellis, Cook & Ellis* for appellants.

(1) The court erred in giving to the jury instruction numbered 1 at the request of respondent company, defendant now. Chouquette v. Barada, 28 Mo. 491;

Fine v. Public Schools, 30 Mo. 166, 39 Mo. 59; Rose v. Spies, 44 Mo. 23; Jones v. Jones, 57 Mo. 138; Miller v. Marks, 20 Mo. App. 269; Hopper v. Vance, 27 Mo. App. 336; Railway v. Stock Yards Co., 120 Mo. 541. (2) The court erred in giving instruction numbered 2 at the request of respondent company.

*Meservey, Pierce & German* for respondent.

(1) The court did not err in giving to the jury defendant's instruction numbered 1. Nichols v. Larkin, 79 Mo. 270; Bronze Co. v. Doty, 92 Mo. App. 11; Tyler v. Hall, 106 Mo. 323; Clark v. Cordry, 69 Mo. App. 16; Russell v. Ins. Co., 55 Mo. 594; State ex rel. v. Branch, 151 Mo. 622. (2) No error was committed by the court in giving to the jury defendant's instruction numbered 2. (3) On the pleadings and the evidence a demurrer to the evidence should have been sustained.

BROADDUS, P. J.—Plaintiffs in the years 1899 and 1900 erected a shoe factory building at the corner of Eighth and Washington streets in Kansas City, Missouri. One James C. Jocelyn was employed by plaintiffs to superintend the construction of said building and was to have it in charge after it was so constructed. The defendant company was a manufacturer of paints at Chicago, Illinois, and the Lewis Supply company was its agent at Kansas City Missouri, for the sale of its paints. After the completion of the building in 1900 Mr. Jocelyn entered into correspondence with defendant company in behalf of plaintiffs in reference to what is called its "Anti-Flame" paint. The defendant answered plaintiffs' inquiries and also referred plaintiffs to the Lewis Supply Company for necessary information. Defendant and said Supply Company made such representations to plaintiffs' agent, Jocelyn, as to the quality of the paint that decided him to adopt it for

painting plaintiffs' building. The defendant also offered to apply the paint to the building at the price of two cents for two coats per square foot, but the offer was not accepted. Instead thereof, Jocelyn employed one Eager, a practical painter, to apply and furnish the paint. It was however, a condition of the contract between plaintiffs and Eager that he would procure a guarantee from defendant, that "the 'Anti-Flame' will not turn yellow neither will it crack and scale off, and that it will prove superior in every way to any other paint on the market for the purpose needed."

Eager procured the required guarantee but as the signature to it was typewritten the plaintiffs were not satisfied with it and directed him to get one properly signed. One properly signed was furnished by defendant in place of the one first mentioned but not till after the painting had been completed. The guarantee in question is as follows:

"Messrs. Barton Bros., Kansas City, Mo.

"Gentlemen: We guarantee that our 'Anti-Flame' will not turn yellow, neither will it crack and scale off. We also guarantee that our 'Anti-Flame' will be in every way as described and represented in our circulars and printed matter and will prove entirely satisfactory if mixed and applied in strict accordance with our instructions."

The printed matter referred to an eight page pamphlet describing the paint, giving its characteristics and describing where it should and should not be applied. Among other statements it contained one to the effect that it should not be applied to green or damp timber. Also, another pamphlet giving testimonials of persons who had used the paint as to its quality. With each bag of the material shipped to the plaintiffs was sent printed directions for mixing the paint, which, in addition, contained the following language: "For other details see 'Anti-Flame' pamphlet," and, "have these di-

rections carried out to the letter." The evidence showed that plaintiffs received these pamphlets. But it does not appear that plaintiffs' agent read them, and he stated his attention was not called to the notice that the paint should not be applied to green or damp timber. In a short time after applying the paint plaintiffs' agent discovered that it had begun to turn yellow, to crack and to peel off. Defendant introduced evidence to show that the result was caused by it being applied to the green or damp lumber of the building.

The verdict and judgment were for the defendant, from which plaintiffs appealed. The case hinges principally on the question whether or not plaintiffs were bound by the statement in the pamphlet that the paint should not be applied to green or damp timber.

Instruction numbered one, given over plaintiffs' objections, practically settled the question in behalf of defendant. It is as follows: "If you find and believe from the evidence that certain circulars and printed matter were delivered either to H. B. Eager or to plaintiffs at the time or previous to the sale by defendant to H. B. Eager of the Anti-Flame containing a warning that dry Anti-Flame should not be applied on wet, green or moist lumber, and that without the consent of defendant, plaintiff's applied the Anti-Flame to lumber that was wet, green and moist and that the failure, if any, of the paint to fulfill the terms of the written guaranty was wholly caused by such condition of the lumber, then plantiffs cannot recover even though the jury find and believe from the evidence that as a result of the application of the Anti-Flame to the lumber while in such condition it did turn yellow and crack or scale off." The instruction in effect told the jury that if the paint was applied to the building in its then condition without the consent of defendant their verdict should be for it, the other facts referred

to being admitted.. There was no such issue and there was no contention at any time that defendant had consented that the paint should be applied to green or damp timber. The instruction was not only misleading but fatally defective as the whole case was made to depend upon a false issue and was equivalent to a peremptory instruction to find for defendant. It sets up a false issue upon which there was no controversy.

Instruction numbered three is as follows: "The jury are instructed if they find and believe from the evidence that defendant executed and delivered the guaranty read in evidence, after the defendant sold and delivered the 'Anti-Flame' to H. B. Eager, and that there was no new consideration for its execution, then said written guaranty did not create any liability on the part of defendant and plaintiffs cannot recover." It is true, the paper alluded to was not delivered to Eager until after defendant sold the paint to him, yet, the evidence shows without contradiction that it was but a substitute for the former one furnished plaintiffs before the paint was sold, which was objected to by them because defendant's signature was not in proper form. The former paper was given as the inducement to plaintiffs to use defendant's paint; and because the same was not accepted in its then form can make no difference, the later paper being intended to obviate the defect in the first. It was the same contract, in fact, executed in a more formal manner, and related back to the date of the former. Property rights are not to be sacrificed upon such unsubstantial technicalities.

But it is insisted that plaintiffs were bound by the statement in the pamphlet referring to the use of the paint on green or damp timber. We think not. The quality of the paint was unconditionally warranted by defendant if mixed according to directions. The defendant furnished the paint with directions for mixing. These directions accompanying each sack of paint de-

Barton Bros. v. Covering Co.

livered did not refer to the pamphlets for information or directions as to what kind of surface it should be applied on, whether dry, damp or green, but only referred to the pamphlets for other details. That is, for other details for mixing and applying the paint. In the absence of evidence that plaintiffs saw or were aware of such statements, they would not be bound by them. The written contract furthermore only bound plaintiffs to mix and apply the paint in strict accordance with the defendant's instructions. Plaintiffs had the right to stand upon their written guaranty and it was not competent to interject into it any other condition whatever. And we do not think plaintiffs' knowledge, or want of knowledge, so far as the issues of this case are concerned, would affect their right to recover. These pamphlets not having been made a part of the contract in any way by reference or otherwise are no part of the same. The contract is not to be waived by any statement made at the time or prior thereto. This is a familiar principle of law. Should the evidence show that plaintiffs mixed and applied the paint in accordance with the directions they would be entitled to recover.

The cause is reversed and remanded to be tried under the law as herein indicated. All concur.